Samsung Electronics Co., Ltd. Mr. Schultz. May it please the Court, my name is Ryan Schultz. On behalf of the patent owner of Fininity Labs of Texas, LLC. With me today is my colleague, Emily Niles. There are several issues raised in our brief. There are a few that I want to focus in today. The first that I will address is the challenge of constitutionality of the IPR procedure that we've raised in our brief. There are just two main points that I would like to raise with the Court this morning. On that is the first, the question I'm sure is on everyone's mind is how does MCM not control and should that not be dispositive of the issue. We would say there are at least two errors in that decision that would allow this panel to revisit the issue. Are you asking us to overrule MCM? Yes, Your Honor. I believe that there were two errors. Had the MCM Court been briefed with the proper framing of the issues, they would have reached a different conclusion. I think the Federal Circuit case law does support that another panel can overturn another panel decision had the relevant precedent been in front of that prior panel. What's the precedent that wasn't discussed in MCM? Thank you, Judge Steik. The precedent is that patent rights stem from the Constitution. They do not stem from some congressional framework. Article 1, Section 8, Clause 8 provides that to promote the progress of science and useful arts by securing for a limited time to authors and inventors the exclusive right to their respective writings and discoveries. That is the right that is at issue here. That is a constitutional right. It is not one that has been created by Congress, thus it cannot be a public right. You're saying it's a property right, not a public right? That's correct, Judge Reynolds. It is a private property right that the Supreme Court in Brown back in 1857, I believe, said is a private property right. And because it is a private property right, it is subject to the separation of powers and can only be adjudicated by an Article 3 court. The other issue that we would address with this one relates to the Seventh Amendment challenge. And there, I believe the MCM court made an error in that the right that was being analyzed was whether there was a right to a jury trial as to an IPR. That was an error in the analysis because the right cannot change between the separation of powers analysis and the Seventh Amendment right. It is one and the same right, and there is no such thing as a right to an IPR. There is a patent right, and the question is, were patent rights adjudicated to jury trials prior to 1789? And the cases that we cite support that that was the case. Thus, the Seventh Amendment should apply, and then any dispute regarding the patent rights should be adjudicated to a jury trial and not to an administrative body. But I would like to move on to the substance in particular to this appeal. The fundamental error that was made by the Board relates to its use of hindsight to support its finding that there was a reasonable expectation of success for using USB. The petitioners below invited the Board to use hindsight. The Board adopted that, and they have made the same argument here. Now the question is, as the petitioners have set forth, there was a reasonable expectation of success to use the USB cable disclosed in Bork to recharge the batteries. My problem is that you seem to describe Bork as not dealing with recharging, and it's on the face of it. It says it's dealing with that. So I just don't understand how you can argue that it's not concerned with that. Thank you, Judge Sykes. So that walks right into the question I was analyzing, was Bork says, okay, use USB to recharge. Well, then one of Skill is going to say, okay, how? So you admit that it... It says recharging, yes. On the face it says recharging. But when one of Skill takes that reference and says, okay, I'm now going to implement this method, how am I going to do that? And first, if we look at Bork, Bork has no description of the method for USB charging. All the sites that petitioners said below, that they cite to this court today, just simply say recharging. There's no method of how you go about recharging. Well, you connect it with a cable, right? Well, but there's more to it than that. And so then what Bork actually says is, how you would use this USB, you would look to USB specification 1.1. Isn't the point where the USB cable can be used to recharge? And that's what Bork shows, correct? So, yes, Bork says this is what you can do. But the question then is, well, how are you going to implement that? Bork perhaps provides the guidance, says think about USB. But then when you actually look back in 2000, I think it's important to remember that we're talking 16 years ago, how do you use USB to recharge? And then Bork doesn't disclose it. What Bork says is look to USB specification 1.1, which is found at 18-8, 18-37. What's your argument, that using the USB cable to recharge, it doesn't charge enough? Or it discourages memory within the battery, power memory? Our argument is that there was no known method for using USB to recharge. You would have, Bork's disclosure would not be sufficient to establish that there was some known method for using USB to recharge. Whether there would need to be recharging circuitry, if there was even sufficient power for it, whatever it may be, there's not anything there. So what is your argument, that Bork's not enabled? Correct. But it doesn't have to be enabled to be considered for obviousness purposes, right? Right, but you still have to, when you're going with the analysis of having a reasonable expectation of success, you have to have a known method to achieve predictable results. So why isn't it, why doesn't it disclose that? Because when there's no known method for using USB. It would be the same as somebody picking up a script for Star Wars and saying, well it talks about light speed. Now I thus know how to create an engine to make a vehicle travel at light speed. That's not the case. You have to then say, what would one still be able to do with this reference? But the Bork reference, the purpose of the Bork reference and the way it worked in this case, from my understanding, is that it presents the idea that you can use a cable for both for charging and communicating from the device. I mean, it's just the idea that you can do that, and then when combined that with the other references, then you have obviousness. Well, no, I don't believe that Bork is that broad. But how it goes about doing that concept is USB, and their expert admits it's USB. That's on A276. The Borks, again, the USB specification only talks about power. So when one says, oh, I see Bork saying use USB to recharge, and they say, well, how do I do that? They look to the standard specification, the standard specification is silent. But the evidence presented by the expert wasn't that the cable wouldn't work. It said it would reduce the battery's capacity in cycle time. Maybe it was inefficient or, you know, it wasn't a perfect use. But it worked. I mean, it does recharge. Isn't that what? I don't believe that that, I don't believe the evidence supports that. I think that when you look at the totality of all the evidence, there might be a scintilla of evidence that it may or may not have worked. But there was no known method. And that is the fundamental error. It has to be a known method for obviousness. There wasn't one. And, in fact, if we look... Well, didn't the Bork conclude that the evidence showed that there was a known method for recharging? But the known method was USB, which the standard documents, again, make no mention of it. And I think that if you look at how history plays out, it's critical to why this was simply hindsight. If you look, as this court said in the Leo Pharma case, that if there was one of skill having this reference... Well, it's not hindsight because Bork discloses recharging. Bork doesn't disclose how you go about it. And that's where you use hindsight to say, well, we could have fixed it. What aspect of it is not shown? There's no recharging circuitry. There's no method of using fast or slow charging, which I'll get to in a minute. Well, fast or slow charging is not a claim requirement. No, but it's how you implement this known method. There simply is no known method. It just says USB. Well, then one is always left with the question of, well, what is the known method? And, again, I would say the evidence substantially supports that there was no known method. This was an area of further development and continuation. Bork was issued to...assigned to Texas Instrument. Texas Instrument didn't release any product shortly thereafter having Bork using USB to recharge. I think that's evidence to consider to demonstrate there was no known method. And, in fact, cellular phone companies facing the same motivations that are listed in Bork took several years after our priority date and after Bork developed a device that utilized USB for recharging. And I think most critically was the standard for using USB. It changed in 2007 to finally implement recharging. Well, that is when a known method is. To implement fast recharging. Well, just recharging in general. There was no disclosure one way or the other in USB standards of using USB to recharge. It wasn't until 2007 when the standard changed that then it became a known method, and that's why the board used hindsight to arrive at its decision. Thank you. I would like to just move on to several issues here. We also think that the decision should be reversed because the board improperly relied on the new evidence and arguments presented by petitioners in the reply brief regarding slow charging. Again, even if you were to assume that there was enough disclosure in Bork that USB should recharge, then the question was, well, how do you do it? And the petitioners in the reply for the first time said you would use slow charging. That was how you could actually implement the invention in Bork in combination with Galinsky. That was not only needed to prove the case, that would have been needed for their prima facie case for evidence, to prove invalidity. Because they failed to present that in the petition, that evidence should have been stricken, and without that, there is no evidence to support the decision that there would have been a reasonable expectation to gauge success that using USB would have worked. So for that reason, we think the board decision should be reversed. Lastly, the issue I want to get to is, at a minimum, the decision needs to be remanded. This decision by the board, its final decision, is scant with any analysis. And as this court said in Cuts First, Inc. v. Motive Power, Inc., 2015-13-16, the court said, when the board determines that modifications and combinations of art render a claim obvious, the board must fully explain why a person of ordinary skill in the art would find such a change as obvious. This decision here fails woefully on that requirement. There is a paragraph on page 812 where the board says, here's what the petitioner said for it, and then proceeds to refute all the arguments that the patent owner had raised. But there is no analysis fully explaining why a person of skill in the art would have found such obvious combinations, or such changes obvious. There was no analysis of, here's the prior art, here's the differences of the claim, and thus those differences are minor, thus the obviousness should be found. And because of that, at a minimum, this case should be remanded for the board to conduct the full analysis required. Petitioners rely on the progressive auto case, which petitioners, I'm sure, are well aware of. But in that case, the issue was simply the patent owner raised that the board did not fully analyze the motivation to combine. But this court said, well, given the significant amount of analysis in total, which exceeded 20-some-odd pages per claim, one could see that the board did the proper analysis. So is this the argument that's wrapped up in your argument regarding the motion to strike? It's separate from that. It's just more that the board under the APA... Could you address that before you sit down? Yeah. So the motion to strike, we believe that the reply brief had significant amounts of new evidence and new arguments that should have been in the petition. We had asked the board for a motion to strike to demonstrate to the board, here is the new evidence, here's the new arguments, here's why it should be stricken from the record. And the board declined to even entertain the motion. We thought that that was error because there was... Well, no, they said we'll be able to address the new evidence in our final decision. The board said we're capable of separating between evidence that wasn't properly presented to us. But that kind of raises a concern that I have when during the process of an IPR, there's evolution of argument going on, at what time does that close off? It seems to me parties have to have an opportunity to address all of the arguments. But is there something about the final decision, the final written decision, that leads you to believe that the board did not undertake its analysis the way it said it would? Yeah, I think related to slow charging. The board adopted the petitioner's argument that you could use USB to slow charge. That was a new argument raised in the reply brief that I think the board not only failed to... But that's your main argument today. Your main argument is that slow charging is not an issue here. Well, my argument is not even having to reach that level of slow charging. I think even just from the beginning, there was no known method for using USB to recharge, much less that slow charging was even an option. But had we had the opportunity to address that issue, because it should have been properly presented in the petition and not in the reply brief, then we wouldn't have been able to address that problem. But the board made no analysis of this was new evidence, we're going to ignore that, and we're only going to rely on that. They made no effort for that. I see my time's up. Yeah, why don't we restore a couple of minutes for rebuttal, and we'll go to the other side. Thank you, Your Honor. May it please the court, Doug Hallward-Driemeier on behalf of the petitioners. Your Honor, the board's decision has a full explanation, both of the motivation to combine and the reasonable expectation of success, which were the only issue that was contested before the board. The board set forth in its own findings, in fact, its description of BORC, both the fact that it disclosed USB cable with multiple conductive elements, allowing electronic device to simultaneously communicate with and recharge the battery of a portable device. That's the board's own finding on page A-11. They come back to that on page A-18. Again, this is the board's own finding with respect to BORC's disclosures. It says, BORC expressly discloses using USB 1.1 port and cable to both recharge and communicate with a portable device such as a cell phone. They seem to admit now that it discloses the recharging, but they are arguing that it doesn't disclose sufficiently how to do it so that there would be a reasonable expectation of success. Your Honor, I think, first of all, it's worth noting that the claim language and indeed the disclosures in the 390 patent are far less specific in this regard than the BORC patent is. The BORC cites on page A-17, for example, the fact that BORC discusses the voltage regulator that would be necessary to utilize the USB to recharge. There has to be a stepping down of the voltage coming out of the computer to a level that would be usable in the portable electronic device. And that's discussed at length in column 7 of BORC, and the board cites that on page A-17. So, as Your Honor, I think the colloquy with counsel disclosed, their argument really is that BORC is not enabled. Now, they never made it in that fashion before the board because, of course, a prior art reference is presumed to be enabled. It would be the obligation and burden of the party challenging that to demonstrate that it was not enabled. They never made the argument in such terms, but clearly they presented some evidence and the petitioners submitted a responsive declaration that focused exactly on why that argument was mistaken. But the board cites to BORC itself in explaining that BORC discloses recharging and indeed discloses how recharging would happen in that language on column 7. What they're saying, though, is that, and I think the board denied the motion to strike because it came too late, so put aside the motion to strike. But what they're saying is that the board shouldn't have relied on the reply evidence that you submitted concerning slow charging because that was a new issue. Well, I think there are three responses to that, Your Honor. First is, and the board says in footnote 6, that's on page A-16, that really the patent owner is attempting to add additional limitations that are not in claim 16, such as the capacity of the battery or the rate of charging. Those are not limitations in claim 16. So in a sense, all of this is beside the point. So the board says that. Well, not perhaps beside the point if the first time that the ability to slow charge was disclosed was in the reply. Well, Your Honor, again, BORC teaches. This is not a combination of Galenski and the USB specs. This is a combination of Galenski and BORC. BORC says you can use the USB and the current that it allows to recharge the battery of a portable device. And BORC says you can do it, and indeed you can do it, exactly as BORC discloses. BORC even goes into some detail about how that happens, such as the circuitry that exists in the cable, that you have the two separate circuits. You have the voltage regulator. The board cites that disclosure of BORC. There was a specific argument it made by the patent owner in opposition that it could not charge. You would have had no expectation of success because it cannot work. Now, that assertion was false, and it was demonstrated to be false by our reply affidavit. You did not need our reply affidavit to make out the prima facie case. We had done so with BORC and the disclosures of BORC. But when they contested that BORC would not work as it claims, and again, it's presumed enabled, we properly submitted rebuttal evidence to prove that that assertion by them in their opposition was false. There was some other material that was in the supplemental declaration about the fact that some of the devices in 2003, and this is previous to the USB 3.0 spec in 2007, actually did provide for recharging with the USB cable. And that was under USB spec 2.0, which has the same current, the same voltage, the same watts as the USB 1.1, which is what BORC was discussing. So indeed, devices did come on the market in 2003 that recharged precisely as BORC discloses. The board did not consider those in its decision. What did they say about the reply? Did they rely on the slow charging evidence that you submitted? Well, I think they do rely on it. There's a reference at A16. They say the charging method, a slow charging method would be not only acceptable but recommended. Is this stuff from the reply? This is stuff from the reply. The discussion of slow charging is in the reply. That was not necessary to conclude that we had made out our prima facie case, however. The prima facie case is established by BORC and its explicit teaching that you can use the USB 1.1 to recharge, as indeed you can. The argument for- So what did you put in the reply? A declaration from Dr. Zhang? We relied on Dr. Quackenbush. Dr. Zhang was the patent owner. Okay, so you put in a declaration from Dr. Quackenbush. Right. They had the opportunity to depose him, right? Your Honor, you're absolutely correct. They had an opportunity to depose him. They had an opportunity, had they deposed him, to offer observations. They did not do that. Then they could have submitted observations on the deposition. They could have submitted observations. They did not take advantage of those opportunities that were afforded them. Instead, they simply sought to strike the entirety of the declaration so that what the board would have been left with was an inaccurate statement by Dr. Zhang that you cannot charge, which is simply not true. And that's, of course, not- that is not due process. Certainly due process doesn't require that they be entitled to offer unrebutted, inaccurate testimony. The board limited its consideration of the Quackenbush reply declaration to the proper rebuttal testimony to specifically respond to and answer the assertions in the Zhang declaration. So I think, as I said, there are really three responses. The first is I don't think this is necessary because this has to do with whether you can fast charge, whether you can charge a battery of a particular capacity. None of that is a limitation in the 390 patent. So I think for the reasons stated in footnote 6, this is really a sideshow. Secondly, the board relies on BORC itself and what it does disclose in column 7, which is part of our prima facie case. And finally, it was proper rebuttal testimony and the procedures of the board provide the opportunity of the patent owner to cross-examine and offer observations. But the patent owner did not take advantage of that opportunity. So I don't think they can complain to this court that the board deprived them of their rights. If there are no further questions, Your Honor. Thank you. You had the right to depose Dr. Krakenbusch, right? We did have the right to depose him. Why didn't you do it? Because the issues that he had raised were heavily substantive ones and ones that we would not, even through a deposition, would not have been able to properly respond to those arguments and why they were insufficient. Because all we would have been left with was simply his responses to questions. And I'm going to assume that Dr. Krakenbusch is not all of a sudden going to flip his own opinion and say that what he said earlier was wrong. These were substantive technical issues that we needed an opportunity to be able to respond fully to with our own experts. Simply being able to take a deposition and get him to administer. But your expert had addressed the issues, right? Dr. Zong had addressed that issue. We had not specifically addressed why the slow charging, for instance, was still not an option for USB. We just said charging in general for USB would not have been one that we looked at. They then raised this idea, well, you could possibly slow charge. We didn't get an opportunity to substantively respond to that. In motions for observations, as this Court I'm sure is well aware, simply single paragraphs where you say this testimony here is relevant to here with no argument. I mean, you can't even explain to the Board why that matters to it. So it doesn't truly solve or remove some of the unfair prejudice by having this new evidence. Did you ask to have the opportunity to submit a new affidavit from Dr. Zong? We did not because the rules don't permit that. And I think having to require a party to think of other options or mechanisms that are not contemplated in the rules, I think, places an undue burden on the party. We had the rules set forth and we played within those. And because our only option was the motion to strike. Well, you filed a motion to exclude in, and you're arguing timing in that motion. But yet you have the opportunity to submit evidence to rebut that new evidence, and you didn't take advantage of that. I'm not sure that we would have. We could have filed a motion to exclude the evidence, but there was no really evidentiary basis to exclude it. We disagreed substantively with it, which would not have been the proper vehicle for a motion to exclude under an evidentiary ruling. I'm referring to the opportunity to depose and maybe submit a new declaration in opposition to Dr. Quackenbush's views. The rules don't provide you a mechanism to do that. I mean, all we could have done was taken the deposition and filed a motion for observation where I said the rules are pretty clear. Well, you could have asked them to waive the rules. Right, but I mean the rules are what they are. The point is you have to raise the point before the board to give them an opportunity to grapple with it. And you didn't do that. I mean, you made a motion to strike even though the rules don't provide for a motion to strike. So why shouldn't you be required to assert the need for a further rebuttal affidavit if that's going to be the argument you make on appeal? Well, because the board has been consistently clear since the beginning that there is no such opportunity. So it seems like a fairly futile effort to ask for something that the board... Your Honor, I'm not sure if this necessarily falls into one of those categories when we're talking about things that are just outside the complete context of the rules that are set up for how the procedure is going to be handled. But I see that my time has run out. Thank you. We thank both parties and the case is submitted.